CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 08 2011
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KIMBERLY CHAMBERLAIN, | ) |
| Plaintiff, | ) Civil Action No. 5:10CV00028 |
| v. | ) **MEMORANDUM OPINION** |
| VALLEY HEALTH SYSTEM, INC., | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

The plaintiff, Kimberly Chamberlain, filed this action against her former employer, Valley Health System, Inc. ("Valley Health"), pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213, as amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553. The case is presently before the court on the defendant's motion for summary judgment. For the reasons that follow, the court will deny the defendant's motion.

## Factual Background

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

This case arises from a series of events that culminated in the termination of the plaintiff's employment as a pharmacy technician at Winchester Medical Center, a hospital operated by Valley Health. Chamberlain was previously employed at the hospital on two occasions. She worked as a full-time pharmacy technician from April of 1999 to June of 2007. She was rehired in March of 2008 to work on a per diem basis. As a per diem employee, Chamberlain generally worked "every other weekend and two days during the week every other

week." (Chamberlain Dep. at 17). In addition to her per diem job at Winchester Medical Center, Chamberlain worked as a pharmacy technician at a local Rite Aid store.

In September of 2008, Chamberlain noticed that she was having difficulty performing fine visual tasks. She went to an ophthalmologist, Dr. Jacqueline Garringer, on September 26, 2008, and reported that she was experiencing blurred vision in her right eye. Dr. Garringer issued a "back to work note" for September 30, 2008, and referred Chamberlain to Dr. Robert Wehner, a retina specialist. (Chamberlain Dep. Ex. 21).

Chamberlain was examined by Dr. Wehner on September 29, 2008. Following the examination, Dr. Wehner provided the plaintiff with a handwritten note, in which he indicated that Chamberlain had "a visual field defect [in her right eye] which made fine visual tasks more difficult." (Chamberlain Dep. Ex. 9). In a typed letter to Dr. Garringer, Dr. Wehner opined that the defect could be medication-related.

When Chamberlain worked her next scheduled shift at the hospital on October 2, 2008, she approached her supervisor, Julie Elrick, about her vision problem and provided Elrick with the handwritten note from Dr. Wehner. Chamberlain advised Elrick that she wanted to remain on the schedule at the hospital, but that she would prefer to be relieved from working in the IV room due to patient safety concerns.

Chamberlain worked her next scheduled shift on October 3, 2008. She was not scheduled to work again at the hospital until October 23, 2008. At some point prior to that date, Chamberlain was approached by Bonnie Pitt, Valley Health's Corporate Director of Pharmacy. According to Chamberlain, Pitt advised her that she was being taken off the work schedule, and that she would have to apply for Physical/Mental Disability Leave ("PMD"). Chamberlain

contends that she "never requested nor wanted any leave or time off from work for [her] eye condition," and that she "told Bonnie Pitt that [she] did not need to be off and that [she] could do [her] job." (Chamberlain Aff. at para. 2). Nonetheless, Chamberlain ultimately submitted an application for PMD leave "because [she] was instructed to and to avoid losing [her] job." (Chamberlain Aff. at para. 2).

Chamberlain signed the application for PMD leave on October 20, 2008. The pre-printed form states that leave "must be taken for a minimum of two weeks and a maximum of eight weeks." (Chamberlain Dep. Ex. 11). Chamberlain scratched through the number "eight" and requested twelve weeks of leave beginning on October 20, 2008 and ending on December 29, 2008. According to Chamberlain, "[t]he ending date on the PMD form was selected in consultation with Bonnie Pitt based on when [they] felt [Chamberlain] may obtain an appointment with the specialist." (Chamberlain Aff. at para. 5). Chamberlain emphasizes, however, that she "never wanted nor felt [she] should have been forced to take any time off from work." (Chamberlain Aff. at para. 5).

Pursuant to the PMD policy, Chamberlain was required to have a physician complete a certification form confirming the need for medical leave. The policy states that the form "must be submitted to the Department Director within 15 days from the first day out of work due to PMD," and that failure to submit the form "will result in unplanned absences as defined in the Attendance policy (HR500), or other Corrective Actions as appropriate." (Sharon Pugh Aff. Ex. A).

Chamberlain allegedly asked Dr. Garringer to complete the physician's certification form "as soon as [Chamberlain] got the paperwork." (Chamberlain Dep. at 69). Chamberlain later learned that Valley Health did not receive the form from Dr. Garringer's office.

On October 29, 2008, Chamberlain was examined by Dr. Peter Campochiaro of the Wilmer Eye Institute at Johns Hopkins Hospital. In a subsequent letter dated that same day, Dr. Campochiaro confirmed that Chamberlain's condition did not preclude her from working as a pharmacy technician:

> As we discussed at your visit on 10/29/08, you have mild decrease in vision in the right eye possibly due to inflammatory condition, which has now resolved. Your vision may gradually improve. You have vision in your left eye, and there is no reason that you cannot function normally as a pharmacy technician. There are many pharmacy technicians who have only one eye and function fine. You should be able to return to work any time.

(Chamberlain Dep. Ex. 12). Chamberlain testified at her deposition that she mailed a copy of Dr. Campochiaro's letter to Bonnie Pitt "as soon as [she] received the letter," because she "wanted to make sure that [Pitt] knew [she] was clear to work."[1] (Chamberlain Dep. at 57-58).

Pursuant to the PMD policy, Chamberlain was required to submit a physician's certification form by November 7, 2008. Valley Health contends that it did not receive the required form in a timely fashion, and that more than one of its employees contacted Chamberlain and requested the form. By notice dated December 2, 2008, Sharon Pugh, a leave specialist with Valley Health, advised Chamberlain that her request for PMD leave could not be

---

[1] Valley Health disputes the plaintiff's assertion and maintains that it did not receive a copy of Dr. Campochiaro's letter until after Chamberlain was terminated in February of 2009.

4

approved because Valley Health had not received the certification form from a qualified health care provider.

After receiving the notice, Chamberlain called Dr. Garringer's office. According to Chamberlain, the office manager advised Chamberlain that she had sent the certification form to Valley Health. Nonetheless, the office manager requested another copy of the form and advised Chamberlain that she would resend it. At Chamberlain's request, Sharon Pugh forwarded another copy of the physician's certification form to Dr. Garringer. The form was signed by Dr. Garringer on December 12, 2008. During her deposition, Chamberlain testified that she was of the belief that Dr. Garringer's office faxed the completed form to Valley Health. However, Valley Health contends that it did not obtain the form until after the instant action was filed.

At the end of December 2008, Chamberlain called her supervisor, Julie Elrick. Chamberlain asked to be placed back on the schedule, and advised Elrick that she had a letter from a physician confirming that she could have been working the entire time that she was on PMD leave. Chamberlain contends that she also called her employer on several occasions in January of 2009, and "ask[ed] to be placed back on the schedule as [she] continued to be fully ready, willing and able to return to [her] position." (Chamberlain Aff. at para. 4). She alleges that Bonnie Pitt would not return her calls in January of 2009, and that she later learned from Julie Elrick that Pitt had instructed Elrick not to talk to her.

By letter dated February 5, 2009, Pitt advised Chamberlain that she was being terminated from the payroll:

> As you are aware you indicated last October that you would be applying for PMD leave with Valley Health. We did not receive the necessary paperwork from your physician at that time and therefore we were not able

5

>to grant the PMD leave. Due to these circumstances effective 2/9/09, you
>will be administratively removed from Valley Health payroll.

(Chamberlain Dep. Ex. 18).

Following receipt of the notice of termination, Chamberlain obtained a copy of the physician's certification form from Dr. Garringer's office and made arrangements to meet with Wanda Gilbert, Valley Health's Director of Human Resources. Following the meeting, on March 17, 2009, Gilbert wrote to Chamberlain with the results of her investigation:

>This is in response to your meeting with me on February 13, 2009, concerning your absence and subsequent termination. You reported to your supervisor in October 2008 that you were having eye problems and could not see the small print. There was no alternate position to move you to as small print is prevalent in the Pharmacy and patient safety is always a major concern. After researching your situation it has been determined that you never submitted the appropriate paperwork requesting Physical/Mental Disability Leave even though it had been mailed to your home and you had been informed that Human Resources had not received the paperwork. Duplicate forms has [sic] been sent to your physician at your request, but were never returned to Human Resources. Therefore, you were terminated according to policy.

(Chamberlain Dep. Ex. 20).

## Procedural History

On March 22, 2010, Chamberlain filed the instant action under the ADA, alleging that Valley Health discriminated against her because she was regarded as disabled by the company. In Count One of her second amended complaint, Chamberlain alleges that Valley Health violated the ADA by refusing to permit her to return to work in January of 2009. In Count Two, Chamberlain alleges that Valley Health violated the ADA by terminating her employment in February of 2009.

The case is presently before the court on Valley Health's motion for summary judgment. The court held a hearing on the motion on January 11, 2011. The motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (citing Thompson v. ALCOA, 276 F.3d 651, 656 (4th Cir. 2002)).

## Discussion

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . hiring, advancement, or discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In cases where the employer denies any reliance on discriminatory reasons for its adverse employment actions, the court must adjudicate the plaintiff's ADA claims under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 n.6 (4th Cir. 1997); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57-58 (4th Cir. 1995). Under this framework, the employee bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence.

Halperin, 128 F.3d at 196. If the employee satisfies her initial burden, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). Once the employer has articulated a legitimate, nondiscriminatory explanation for its decision, the burden shifts back to the employee to prove that the employer's stated reason was not its true reason, but was a pretext for discrimination. Id.

### I.     **Prima Facie Case**

To establish a prima face case, the plaintiff must demonstrate: (1) that she was disabled for purposes of the ADA; (2) that she was a qualified individual for the job in question; and (3) that she was discharged, or otherwise suffered an adverse employment action, under circumstances that raise a reasonable inference of discrimination. See McFarland-Peebles v. Commonwealth of Va. Dep't of Motor Vehicles, 352 F. App'x 848, 849 (4th Cir. 2009) (citing EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000)); Halperin, 128 F.3d 191 at 197.

There are three ways to be considered disabled for the purposes of the ADA. An individual is disabled if: (1) she has a physical or mental impairment that substantially limits a major life activity; (2) she has "a record of such an impairment"; or (3) she is "regarded as having such an impairment." 42 U.S.C. § 12102(1). In this case, Chamberlain relies upon the third provision; she maintains that Valley Health regarded her as disabled as a result of her vision problem. Under this provision, as amended by the ADAAA, an individual is regarded as having a disability if "she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived

8

to limit a major life activity." 42 U.S.C. § 12102(3)(A). The provision does not apply to impairments that are both "transitory and minor." 42 U.S.C. § 12102(3)(B).

In moving for summary judgment with respect to this element, Valley Health contends that "Chamberlain was never 'regarded as' disabled because Valley Health believed her vision problem was transitory and minor." (Br. in Supp. of Summ. J. at 16). Construing all of the evidence and factual inferences in favor of Chamberlain, however, the court concludes that a reasonable jury could find to the contrary. As previously stated, Chamberlain has submitted a sworn affidavit in which she states that Bonnie Pitt, Valley Health's Corporate Director of Pharmacy, insisted that Chamberlain was completely unable to work at the hospital as a result of her vision problem, and that Pitt required her to apply for PMD leave. Assuming the truth of Chamberlain's assertions, the court concludes that the issue of whether Valley Health believed that Chamberlain's impairment was both transitory and minor must be decided by a jury.

The second step in the prima facie case requires the plaintiff to show that she was a "qualified individual" for the job in question. Under the ADA, a qualified individual is an individual who "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining which functions are essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

In this case, it is undisputed that the tasks performed by pharmacy technicians require adequate visual acuity, either through normal or corrected vision.[2] What is disputed is whether Chamberlain's vision problem precluded her from performing these essential functions during the specific time period at issue. While Valley Health emphasizes that Chamberlain herself expressed concerns about patient safety when her vision problem first surfaced in September of 2008, the adverse employment actions at issue occurred in January and February of 2009. By that point, Chamberlain had been approved to work by Dr. Campochiaro, who opined that there was "no reason that [Chamberlain could not] function normally as a pharmacy technician." (Chamberlain Dep. Ex. 12). In light of Dr. Campochiaro's letter, the court concludes that a reasonable jury could find that Chamberlain was qualified to work as a pharmacy technician in January and February of 2009 and, thus, that material issues of fact preclude the entry of summary judgment on this issue.

For the final prong of the prima facie case, the plaintiff must show that the circumstances of the adverse employment actions would allow a reasonable jury to infer that the actions were taken because Chamberlain was regarded as disabled. "Plaintiff's evidence must be such that, if the trier of fact finds it credible, and the employer remains silent, the plaintiff would be entitled to judgment as a matter of law." Ennis, 53 F.3d at 59.

When viewed in the light most favorable to Chamberlain, the court concludes that the record contains sufficient evidence to support an inference of discrimination. As previously summarized, Chamberlain maintains that she was forced to take PMD leave over her objection,

---

[2] The listed physical requirements for technicians at Winchester Medical Center include "[c]orrected vision and depth perception sufficient to identify and discern the printed words, instruments and instructions," and constant visual acuity, near and far. (Elrick Aff. Exs. D & E).

and that her belief that she remained capable of working despite the vision problem was confirmed by the October 29, 2008 opinion letter from Dr. Campochiaro. Chamberlain contends that she forwarded Dr. Campochiaro's letter to Bonnie Pitt after she received it, and that she also advised her supervisor in December of 2008 that she had been released to return to work. Thereafter, according to Chamberlain, Valley Health officials gave her the cold shoulder, refused to schedule her for work in January of 2009, and ultimately terminated her in February of 2009. Drawing all inferences in favor of Chamberlain, the court concludes that Chamberlain has proffered evidence sufficient to satisfy the final prong of the prima facie case. See, e.g., Pettus v. Am. Safety Razor Co., 2001 U.S. Dist. LEXIS 6968, at *15 (W.D. Va. Mar. 29, 2001) (holding that certain events preceding the plaintiff's discharge, including the employer's ultimatum of disability leave or termination, and the employer's receipt of a medical opinion favorable to the plaintiff, raised a reasonable inference of discrimination).

## II. Pretext

Once the plaintiff establishes a prima facie case of disability discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse actions. Halperin, 128 F.3d at 196. Here, Valley Health has articulated a permissible reason for refusing to permit the plaintiff to return to work in January of 2009 and later terminating her in February of 2009, namely that the plaintiff failed to comply with the PMD policy. Because Valley Health has met its burden of proffering a permissible reason for its adverse employment actions, the plaintiff is required to show that the asserted reason is pretext for discrimination. Id.

Viewing the record in the light most favorable to Chamberlain, the court concludes that Chamberlain has presented sufficient evidence of pretext to withstand summary judgment. As recounted above, the sequence of events preceding the adverse employment actions at issue is

sufficient to permit a reasonable jury to find that Valley Health's proffered justification for its actions is unworthy of credence. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). According to Chamberlain's evidence, Valley Health was well aware by January of 2009 that she wanted to return to work at the hospital and that she had been released to work by Dr. Campochiaro. However, Valley Health refused to return Chamberlain to the schedule and ultimately terminated her employment. While Valley Health maintains that its actions were based solely on the plaintiff's failure to submit the physician's certification required for PMD leave, Chamberlain has stated, under penalty of perjury, that she was forced to apply for the medical leave over her objection, and that she nonetheless attempted to comply with the employer's requirements. For instance, Chamberlain testified during her deposition that she had the physician's certification form sent to Dr. Garringer on more than one occasion, and that she was advised that the form had been submitted to Valley Health. Assuming the truth of Chamberlain's assertions, the court is convinced that a reasonable jury could find that Valley Health's proffered justification for its adverse employment decisions was not its true reason, but was a pretext for discrimination.[3]

---

[3] In reaching this decision, the court notes that Valley Health has proffered evidence from which a jury could discredit the plaintiff's version of the events, including records from her personnel file from Rite Aid. On summary judgment, however, "[i]t is not [this court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose [her], or to disregard stories that seem hard to believe." Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991). Instead, such credibility determinations are within the province of the jury. Id.; see also McCray v. Pee Dee Reg'l Transp. Auth., 263 F. App'x 301, 303 (4th Cir. 2008) ("Credibility determinations are improper on summary judgment; where resolution of an issue of fact depends upon such a determination, summary judgment is inappropriate.").

## Conclusion

For the reasons stated, the motion for summary judgment filed by Valley Health will be denied, and the case will proceed to trial on the plaintiff's claims of discrimination. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 3rd day of February, 2011.

/s/ Glen Conrad
Chief United States District Judge